UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY K.,<br><br>                  Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>                  Defendant. | Case No.: 3:18-cv-1859-AJB-RBM<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Docs. 15, 22.]** |

## I.    INTRODUCTION

Plaintiff Timothy K. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act"). (Doc. 1.) Before the Court are: Plaintiff's Motion for Summary Judgment, seeking reversal of the Commissioners final decision and an award of social security

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019 and is therefore substituted for Nancy A. Berryhill as Defendant. *See* 42 U.S.C § 405(g); Fed. R. Civ. P. 25(d).

1

disability and supplemental security income benefits, or alternatively, remand to the Social Security Administration for further proceedings (Doc. 15); Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment (Doc. 22); Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Doc. 25); and Defendant's Reply in Opposition to Plaintiff's Reply and Opposition to Defendant's Cross-Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment (Doc. 27).

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(c)(1)(c). After a thorough review of the papers on file, the Administrative Record ("AR"), and the applicable law, this Court respectfully recommends that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**, Defendant's Cross Motion for Summary Judment be **DENIED IN PART** and **GRANTED IN PART**, and that the matter be **REMANDED** for further proceedings before the Social Security Administration.

## II. PROCEDURAL BACKGROUND

On November 1, 2013, Plaintiff filed an application for disability and disability insurance under Title II of the Act (AR, at 195-199[2]), and on December 28, 2015, Plaintiff filed an application for Supplemental Security Income under Title XVI of the Act (AR, at 200-206). Both applications alleged disability beginning on July 1, 2012. (AR, at 195-199; 200-206.) After his claim was denied initially (AR, at 130-133) and upon reconsideration (AR, at 136-140), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (AR, at 141), which was held on September 6, 2016 (AR, at 69-98). Plaintiff appeared and was represented by counsel, and testimony was taken from Plaintiff and John P. Kilcher, a vocational expert ("VE"). (AR, at 89-98).

---

[2] All AR page-number citations refer to numbers listed on the bottom right-hand corner of the page, rather than page numbers assigned by the CM/ECF system.

On November 3, 2016, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Act. (AR, at 52-62.) On January 2, 2017, Plaintiff sought review of the decision by the Appeals Council. (AR, at 192-194.) On December 12, 2017, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision became the final decision of the Commissioner pursuant to 42 U.S.C. § 405(h). (AR, at 4-10.)

### III. ALJ'S FINDINGS

In his decision, the ALJ initially determined Plaintiff met the insured status requirements of the Act through December 31, 2018. (AR, at 54.) The ALJ then followed the five-step sequential evaluation process to determine whether Plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 29, 2014, the alleged onset of disability[3]. (AR, at 54.)

At step two, the ALJ found Plaintiff suffers from the following severe impairments: degenerative disc disease of the spine, degenerative joint disease, and headaches. (AR, at 54.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (AR, at 57.)

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except that he is further limited to occasional postural activity, such as climbing, stooping, kneeling, crouching, and crawling." (AR, at 58.)

For purposes of his step four determination, the ALJ gave great weight to the VE's testimony that Plaintiff had worked as a "supervisor, maintenance for installation[,]

---

[3] Plaintiff initially claimed a disability onset date of July 1, 2012, which was later amended to November 29, 2014. (AR, at 52.)

3

[Dictionary of Occupational Titles ("DOT")] code 891.137.010," and that a hypothetical person with Plaintiff's vocational profile would be able to perform the exertional demands of Plaintiff's past work. (AR, at 62; 95-96.) The ALJ found Plaintiff "is capable of performing past relevant work as an insulation supervisor." (AR, at 61.)

Accordingly, the ALJ found Plaintiff "had not been under a disability, as defined in the [Act], from November 29, 2014, through the date of []his decision . . . ." (AR, at 62.)

## IV.    ISSUES IN DISPUTE

As set forth in the moving and opposition papers, the disputed issues are as follows:

1. Whether the ALJ properly considered the medical evidence and assessed an RFC consistent with the record as a whole. (Doc. 15-1, at 3-5; Doc. 23, at 9-18.)

2. Whether the ALJ properly found Plaintiff capable of performing his past relevant work. (Doc. 15-1, at 5-6; Doc. 23, at 18-20.)

3. Whether the ALJ properly weighed the opinion of Plaintiff's treating physician, Arsenio Jimenez, M.D. (Doc. 23, at 15-18; Doc. 25, at 3-4.)

## V.    STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. § 405(g). "As with other agency decisions, federal court review of social security decisions is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 2003).

In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and

4

3:18-cv-1859-AJB-RBM

the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

When the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Stated differently, when the evidence "can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]"; rather, the Court only reviews "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). Further, when medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are the exclusive functions of the ALJ. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is not within the Court's province to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *Batson*, 359 F.3d at 1193.

## VI. DISCUSSION

### A. THE ALJ FAILED TO PROPERLY CONSIDER THE MEDICAL EVIDENCE IN MAKING HIS RFC DETERMINATION.

Plaintiff submitted medical reports from two state consultative examiners, Thomas J. Sabourin, M.D. and Zavan Bilezikjian, M.D., both orthopedic specialists, to support Plaintiff's claim of disability. Dr. Bilezikjian recommended several postural and exertional limitations, but the ALJ failed to address those additional limitations in the decision.

Plaintiff contends the ALJ's RFC determination is not supported by the record as a whole because the ALJ failed to identify any reasoning for rejecting the additional limitations by Dr. Bilezikjian. (Doc. 15, at 3.) Defendant responds that the ALJ's RFC

determination is supported by the record as a whole because he gave greater weight to two consistent orthopedic specialist consultative examiners' opinions, the physical examination findings, and the overall treatment regimen. (Doc. 23, at 3.) For the reasons outlined below, the Court finds that the ALJ erred by failing to provide specific, legitimate reasons for rejecting Dr. Bilezikjian's additional limitations.

An ALJ is not required to accept each limitation recommended by physicians. *Ryan*, 528 F.3d at 1198. But "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal citations and quotations omitted). An ALJ can satisfy the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (internal citations omitted).

When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996.) "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13.

1.  <u>The Inconsistent Consultative Examiner Reports.</u>

Plaintiff submitted reports from Dr. Sabourin (AR, at 445-449) and Dr. Bilezikjian (AR, at 475-479) in advance of his administrative hearing.

Dr. Sabourin's report reads, in relevant part:

6

> [b]ased on my examination today, I feel [Plaintiff] could only lift or carry 20 pounds occasionally and 10 pounds frequently. He could stand and walk up to six hours of an eight-hour workday and sit for six hours of an eight-hour workday. Push and pull limitations are equal to lift and carry limitation. He could climb, stoop, kneel, and crouch only occasionally. He has no manipulative limitation. He has no need for assistive devices to ambulate.

(AR, at 445.)

Dr. Bilezikjian's report reads, in relevant part:

> [b]ased upon today's examination, it is the examiner's opinion from an orthopaedic standpoint that the claimant is able to push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently, limited because of his back pain. Walking and standing can be done 2 hours per day with frequent rest periods every 15-20 minutes. No assistive device is required for ambulation. Postural activities such as bending and stooping can be done on an occasional basis. Kneeling and squatting can be done on an occasional basis due to the knee problems. The claimant should not walk on uneven terrain or climb ladders. Sitting can be done 6 hours per day with regular change of position. Fine and gross manipulative movements can be done without restrictions.

(AR, at 479.)

Both opinions are partially consistent in that each physician recommends exertional and postural limitations; however, the opinions are inconsistent because the standing, walking, and sitting limitations are vastly different. While Dr. Sabourin found Plaintiff can stand and walk for six hours of an eight-hour day, Dr. Bilezikjian found Plaintiff can only stand or walk for two hours of an eight-hour day. (AR, at 449, 479.) While Dr. Sabourin did not opine as to Plaintiff's ability to sit, Dr. Bilezikjian found that Plaintiff can only sit for six hours of an eight-hour day with regular changes of position. (*Id.*) While Dr. Sabourin found that Plaintiff can climb occasionally, Dr. Bilezikjian found that Plaintiff could not climb ladders or walk on uneven terrain. (*Id.*) In sum, whereas Dr. Sabourin's conclusions are consistent with light work, Dr. Bilezikjian's conclusions are consistent with sedentary work. *See* 20 C.F.R. §§ 404.1567, 416.967. Therefore, Dr. Sabourin's and Dr. Bilezikjian's opinions are inconsistent.

///

2. <u>The ALJ's Analysis of Medical Opinions.</u>

The ALJ's RFC determination failed to identify and address the inconsistencies in Dr. Sabourin and Dr. Bilezikjian's postural and exertional recommendations when determining Plaintiff's RFC.

The ALJ wrote:

> [t]he undersigned gives greater weight to the orthopedic consultative examination opinions that the claimant is limited to light work with some postural limitations (Exhibits 4F and 8F). These limitations are consistent with each other, consistent with the rather unremarkable physical examination findings, as noted above, and consistent with the conservative treatment regimen as a whole. The claimant has a normal gait and station and does not use assistive devices. He has normal motor strength, no neurological deficits, and a negative straight leg-raising test (*Id.*). He has not required lumbar spine surgery and he has minimal degeneration in the hips and knees. These facts support a light residual functional capacity.

(AR, at 61.)

Even though the ALJ specifically analyzed Dr. Bilezikjian's clinical findings, the decision is silent as to Dr. Bilezikjian's additional exertional and postural limitations. The ALJ cited Dr. Bilezikjian's opinions as to Plaintiff's general appearance, station and gait, cervical spine examination, thoracolumbar spine examination, straight-leg raising test, examination of extremities and joints, neurologic examination, radiographic examination, and Dr. Bilezikjian's diagnostic impressions. (AR, at 60.)

During the administrative hearing, the ALJ questioned the VE as to the additional limitations:

> Q: Hypothetical two. If their standing and walking is limited to two hours total, no climbing of ladders—does that still allow for past work?
> A: Well, if the standing and walking was—
> Q: Two hours total.
> A: No. That would not be compatible for past work.
> Q: Are there transferable skills to other work in the national economy?
> A: No. There's not.
> Q: Is your testimony consistent with the DOT?
> A: Yes, it is, except for the two hours of work and I would add . . . he could

```
              not perform that job as a foreman in that type—add that—
      Q:      Okay.
      A:      Let's see. And that's the only—and the occasional posturals that—that
              would still be appropriate by the DOT. So that's only—the only
              difference is the two hours of standing and walking.
      Q:      Okay.
```

(AR, 95-96.) Based on this line of questioning, the ALJ was aware of Dr. Bilezikjian's additional standing limitation. In spite of that awareness, the ALJ did nothing more than ignore the standing limitation in his decision. *Garrison*, 759 F.3d at 1012.

       3.      <u>The ALJ Erred by Ignoring Medical Opinions.</u>

By failing to identify and consider the inconsistencies between the consultative examiners' opinions, ignoring the additional postural and exertional limitations set forth by Dr. Bilezikjian, and failing to provide specific, legitimate reasons supported by substantial evidence for doing so, the ALJ erred. *Ryan*, 528 F.3d at 1198; *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). Accordingly, Plaintiff is entitled to remand on this ground so the ALJ may have an opportunity to address Dr. Bilezikjian's additional limitations directly. *See Law v. Colvin*, 657 Fed.Appx 655 (9th Cir. 2016) (remanding for further proceedings rather than for award of benefits because "further administrative proceedings would be useful[.]").

**B.    BASED ON THE RECORD, THE COURT CANNOT DETERMINE WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION THAT PLAINTIFF CAN RETURN TO HIS PRIOR WORK.**

Plaintiff contends the ALJ erred because he misidentified the DOT listing associated with Plaintiff's most recent job, thereby erroneously finding that Plaintiff could return to his past work. (Doc. 15, at 5-6.) Defendant responds that the ALJ correctly identified the DOT listing for Plaintiff's past work, that Plaintiff has waived the issue by failing to object at the administrative hearing, and that even if the ALJ erred, the error was harmless because both DOT listings fall within the same RFC. (Doc. 23, at 13-14.)

Before making a disability determination, the ALJ takes "administrative notice of reliable job information available from various governmental and other publications," such as the DOT. 20 C.F.R §§ 404.1566(d), 416.966(d). Additionally, the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations. *See Gutierrez v. Colvin*, 844 F.3d 804, 806-807 (9th Cir. 2016.) But if a reviewing court cannot determine an ALJ's reasoning in arriving at a step four determination, remand is the appropriate remedy. *See Brynes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995).

As outlined below, there are serious discrepancies between Plaintiff's work history report, the VE's testimony, and the ALJ's decision with respect to Plaintiff's prior work. Plaintiff's work history report and testimony indicates he worked as a supervisor, installation (construction), corresponding to DOT code 863.134-014. (AR, at 76-77, 240-241.) But, the VE classified Plaintiff's prior work as a maintenance supervisor, corresponding to DOT code 891.137-010. (AR, at 96-97.) Finally, the ALJ classified Plaintiff's prior work as an insulation supervisor, a job which has a strength rating that exceeds Plaintiff's RFC. (AR, at 63.) Because the record is unclear as to the classification of Plaintiff's prior work, the Court cannot determine whether the ALJ's step four decision (i.e., whether Plaintiff can return to past work) is based on substantial evidence.

1. Plaintiff's Reported Work History.

Plaintiff's work history report indicates he held two jobs: supervisor of installation, and insulation installer. (AR, at 240-241.) As a supervisor of installation, Plaintiff: "organized, planned, supervised, and staff[ed] on a daily basis[, and] [o]versaw [and] ensured accurate [and] complete [] contract progects [sic] daily." (AR, at 240.) As an insulation installer, Plaintiff: "installed pipe [and] duct insulation for thermal considerations[;] [t]ransported all material [and] tools to and from each job[; and] [l]ocalized all tools [and] materials on site." (AR, at 240-21.) At the administrative hearing, Plaintiff testified that as an installation supervisor, he performed the following work:

10

go and check every job and make sure that they were doing to specs and what—at the end of the day my duty was to take the worst job and make sure—I would have to go out there and make sure. There was always a bad job. My job was to make sure that the easier jobs were running correctly and basically go onto that job and push these, push the people.

(AR, at 76-77.)

### 2. The VE's Testimony and Findings Regarding Plaintiff's Past Work.

At the administrative hearing, the ALJ examined the VE to determine Plaintiff's prior work and whether Plaintiff could return to his prior work:

Q: Go ahead.
A: Okay. You've worked as a supervisor, maintenance for installation. DOT code 891.137-010. Classified as a light level. The claimant performed it at the very heavy level and it's skilled, an SVP of 7. And also worked as an installation installer. DOT code 862.281-022. Classified at the heavy level. The claimant performed it at the very heavy level and it's skilled. SVP of 7. And that's all his past work.
Q[4]: Okay. So let's assume someone of the same age and education as the claimant with past work as indicated. If our individual is limited to light work with occasional postural activities is past work available?
A: Well, his job as supervisor of maintenance would be available in that hypothetical.

(AR, at 95-96.)

However, the VE misclassified Plaintiff's prior work. The job title corresponding to DOT code 891.137-010 is maintenance supervisor (any industry), alternatively titled building-and-grounds supervisor; building maintenance supervisor, mechanical; and building supervisor. (DOT code 891.137-010.) The duties are listed as:

> supervises and coordinates activities of workers engaged in maintaining and repairing physical structures and utility systems of buildings and maintaining grounds: Directs workers engaged in painting and performing structural repairs to masonry, woodwork, and furnishings of buildings and maintaining and repairing building utility systems, such as electrical wiring and control,

---

[4] The administrative hearing transcript indicates this question as part of the preceding answer. However, this appears to be a scrivener's error.

11

heating and ventilating systems[]; and water distributing and plumbing systems[]. Directs workers engaged in ground maintenance activities, such as mowing lawns, trimming for conformance to blueprints, specifications, and standards. Performs other duties as described under SUPERVISOR (any industry) Master Title. May supervise workers engaged in installing, servicing, and repairing mechanical equipment.

(*Id.*) None of these job responsibilities are related to Plaintiff's prior work history, except for supervision of workers engaged in repairing building heating and ventilating systems; and in that aspect, Plaintiff's prior work history is related only loosely. (*Compare* AR, at 76-77, 240-241 *with* DOT code 891.137-010.)

        3.      <u>The ALJ's Interpretation of the VE's Findings as to Plaintiff's Past Work.</u>

The ALJ misinterpreted the VE's testimony in classifying Plaintiff's past work. Finding that Plaintiff can return to his previous work, the ALJ reasoned:

> [i]n this matter, the vocational expert's testimony at the hearing identifies and classifies the claimant's prior work experience as an insulation supervisor (DOT No. 891.137-010; light exertion, heavy exertion as performed; svp-7, skilled). Upon making this finding, the undersigned gives great weight to the vocational expert's testimony that the claimant can perform his past relevant work as an insulation supervisor as generally performed in the national economy given the residual functional capacity.

(AR, at 62.)

Whereas the VE classified Plaintiff's prior work as "maintenance supervisor," the ALJ classified Plaintiff's prior work as "insulation supervisor." But "insulation supervisor" is not a title corresponding to DOT code 891.137-010. The job title to which the ALJ refers, insulation supervisor, is listed as an alternate title to building-insulation supervisor, corresponding to DOT code 863.134-010. (*See* Doc. 15, at 6; DOT code 863.134-010.) An insulation supervisor:

> [s]upervises and coordinates activities of work crew engaged in inserting insulating material in walls, floors, ceilings, and roofs of buildings. Assigns workers to specific duties. Demonstrates to new workers techniques of

> cutting and installing insulation. Inspects installed insulation to determine conformance to specifications. Performs duties as described under SUPERVISOR (any industry) Master Title. May be designated according to type of insulating material used as Mineral-Wool-Insulation Supervisor (construction).

(*Id.*) The job of building-insulation supervisor has a physical demands strength rating of light, and an SVP requirement of 7. But, as Plaintiff points out, there is another job containing the words "insulation" and "supervisor:" supervisor, installation (construction), corresponding to DOT code 863.134-014. (*See* Doc. 15, at 6; DOT code 863.134-014.) The duties are listed as:

> [s]upervises and coordinates activities or workers engaged in applying insulating material to exposed surfaces of equipment, such as boilers, tanks, air ducts or pipes: [e]stimates and requisitions necessary materials and supplies. Assigns workers to specific duties. Demonstrates to new workers techniques of cutting and applying insulation. Inspects applied insulation for conformance to specifications. Compiles production and performance reports. Resolves employee grievances. Performs duties as described under SUPERVISOR (any industry) Master Title.

(*Id.*) These job duties parallel the duties Plaintiff listed in his work history report and testified to at the administrative hearing. But the job of supervisor, installation (construction) has a physical demands strength rating of medium, and an SVP requirement of 8—which exceeds the exertional and strength requirements of ALJ's RFC determination. (*Id.*)

        4.    <u>The Misclassification as to Plaintiff's Past Work Warrants Remand.</u>

The discrepancies in classifying Plaintiff's past work make it impossible to determine whether Plaintiff can return to past work, as the varying classifications impose different exertional and strength requirements. Due to the ambiguity in the ALJ's decision as to Plaintiff's prior work, the Court cannot determine the ALJ's reasoning with certainty to weigh "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035. Therefore, the Court cannot determine whether the ALJ's decision finding Plaintiff can return to past work is supported

by substantial evidence. Accordingly, Plaintiff is entitled to remand on this ground. *See Brown v. Astrue*, 267 Fed.Appx 620, 622 (9th Cir. 2008) (explaining that remand is the appropriate remedy where the VE's testimony was unclear); *Brynes*, 60 F.3d at 642 (remanding for further proceedings because the Court could not determine the ALJ's reasoning).

### C. THE ALJ PROPERLY WEIGHED THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN.

Plaintiff submitted the report of his treating physician, Dr. Jimenez, in support of his application. (AR, at 700-701.) Dr. Jimenez opined that Plaintiff was limited to less than sedentary work, and recommended significant postural and exertional limitations. (*Id.*) However, the ALJ gave minimal weight to Dr. Jimenez' opinion. (AR, at 61.) Plaintiff contends the ALJ failed to properly weigh Dr. Jimenez' opinion by failing to review all the factors enumerated in 20 C.F.R. § 404.1527. (Doc. 25, at 3-4.) Defendant responds that the ALJ properly weighed Dr. Jimenez's opinion because Dr. Jimenez's opinion was inconsistent with Dr. Sabourin's and Dr. Bilezikjian's findings, Dr. Jimenez was not a specialist, and Plaintiff's overall conservative treatment, imaging evidence, and testimony did not support Dr. Jimenez's opinion. (Doc. 23, at 15-18.) The Court finds that the ALJ properly considered the pertinent regulatory factors in rejecting the opinion of Plaintiff's treating physician.

The uncontradicted opinion of a treating physician is generally entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 303 Fed.Appx. 565, 566-67 (9th Cir. 2008). Even when a treating physician's opinion is contradicted by that of another physician, it can only be rejected if an ALJ provides specific and legitimate reasons that are supported by substantial evidence in the record. *Aranda v. Comm'r Social Sec. Admin.*, 405 Fed.Appx. 139, 140 (9th Cir. 2010). The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2) to (6) in determining how much weight to afford the treating physician's medical opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Those factors include:

14

the length of the treatment relationship and the frequency of examination by the treating physician; []the nature and extent of the treatment relationship between the patient and the treating physician[;] . . . the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; . . . the degree of understanding a physician has of the Administration's disability programs and their evidentiary requirements[;] and the degree of his or her familiarity with other information in the case record.

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(d)(1)-(6). The failure to consider these factors constitutes reversible legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

However, "courts in our district have held that *Trevizo* does not 'demand a full-blown written analysis of all the regulatory factors; it merely requires some indication that the ALJ considered them.'" *Kovach v. Berryhill*, 2019 WL 2995824, at *12 (S.D. Cal., July 9, 2019) (quoting *Hoffman v. Berryhill*, 2017 WL 3641881, at *1, *4 (S.D. Cal. Aug. 24, 2017) report and recommendation adopted by 2017 WL 4844545 (S.D. Cal. Sept. 14, 2017) (citing *Yantos v. Berryhill*, 2018 WL 899126, at *1, *6 (S.D. Cal. Feb. 14, 2018) ("[T]he Ninth Circuit has never compelled such a specific analysis. The ALJ is certainly required to consider all of the factors, but the regulations and rulings contain no requirement that each and every factor be specifically analyzed in an ALJ's decision.")).

Here, the record indicates the ALJ considered the regulatory factors in 20 C.F.R. §§ 404.1527 and 416.927 in rejecting the opinion of Plaintiff's treating physician. The ALJ writes:

> the undersigned gives minimal weight to the medical source statement dated May 2016 from internal medicine specialist, Arsenio Jimenez, M.D. . . . Dr. Jimenez is not an orthopedic specialist and the undersigned gives greater weight to Dr. Sabourin and Dr. Bilezikjian, who are orthopedic specialists. The imaging of the lumbar spine and the conservative treatment regimen does not support Dr. Jimenez' extreme limitations. The claimant has not even had lumbar spine surgery and he testified to walking to Sprouts multiple times a day and being the caregiver for his blind girlfriend. Treatment notes also recommend the claimant exercise. Thus, Dr. Jimenez' opinion is inconsistent

with the record as a whole.

(AR, at 61.) Additionally, the ALJ specifically wrote that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR, at 58.) Based on the record, the ALJ properly considered the factors in 20 C.F.R. §§ 404.1527 and 416.927 to discount Dr. Jimenez' opinion on the grounds that the opinion was inconsistent with the record as a whole, Dr. Jimenez was not a specialist, and Plaintiff's overall conservative treatment regimen, imaging evidence, and testimony did not support the opinion. Thus, the ALJ provided specific and legitimate reasons for discounting Dr. Jimenez' opinion which are supported by substantial evidence in the record, and considered the factors enumerated in 20 C.F.R. §§ 404.1527 and 416.927. *Aranda v. Comm'r Social Sec. Admin.*, 405 Fed.Appx. 139, 140 (9th Cir. 2010). Accordingly, Plaintiff is not entitled to remand on this ground.

## VII. <u>CONCLUSION</u>

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C § 636(b)(1) and Federal Rule of Civil Procedure 72(b). For the foregoing reasons, this Court respectfully recommends that Plaintiff's Motion for Summary Judgment be **<u>GRANTED IN PART</u>** and **<u>DENIED IN PART</u>**, that Defendant's Cross-Motion for Summary Judgment be **<u>DENIED IN PART</u>** and **<u>GRANTED IN PART</u>**, and that matter be **<u>REMANDED</u>** for further proceedings before the Social Security Administration, so that the ALJ may address Dr. Bilezikjian's additional exertional and postural limitations, and accurately classify Plaintiff's prior work.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **November 13, 2019**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be filed with the Court and served on all parties no later than **November 27, 2019**. The parties are advised that failure to file

16

objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: October 30, 2019

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE